## Jason C. Pierce & Son *v.* Smith, Eastman & Co.

Where the plaintiffs gave to the defendants a guaranty that iron, shipped by the defendants on board the plaintiffs' sloop, to be transported from St. Johns to St. Albans, should pass the custom house in Vermont prior to the enforcement of duties under the Tariff Act of 1842, and the defendants were compelled to pay duties on the iron according to the rates prescribed by that tariff, it was held that such payment was not a proper subject of charge on book account; and could not, in an action on book account, brought by the plaintiffs to recover for the freight, be offset against the plaintiffs' account.

Book Account. The plaintiffs' account, as presented, was conceded to be correct. The defendants presented an account for $205, cash paid to the Collector of Vermont, being the difference between the duty on fifty tons of pig iron at twenty *per cent.*, and the duty imposed by the Tariff Act of 1842; in reference to which the auditors reported, that, on the 29th day of August, 1842, the defendants being about to ship that amount of iron from St. Johns to St. Albans, the plaintiffs applied to them to place it on board the plaintiffs' sloop, and guaranteed, for the sum of ten dollars, that the iron should be entered at the Custom House in Vermont before any action should be had under the tariff that was, as the parties supposed, about to be enacted by Congress. It did not appear that the guaranty was accepted until Sept. 1, 1842. On that day the plaintiffs wrote to the defendants as follows. "Gentlemen. We have shipped by sloop Henry Clay, to your address, Pig Iron,—No. tons, 49—14—2,—which we have guaranteed to pass the Custom House prior to enforcement of new tariff, for which obligation we are to receive for guaranty $10."

The iron was shipped Sept. 1st, and, on the same day, reached the custom house, and was there entered by the plaintiffs under the rates of duties imposed by the old tariff, being twenty *per cent.* on the cost and charges, and, on the second day of September, the iron was delivered to the defendants at St. Albans. The new tariff became a law Aug. 30th, and after that time the duty on pig iron was $9.00 per ton; but the instructions under the new tariff did not reach the collector of the district of Vermont until Sept. 5th. After the instructions were received, the collector demanded

the duties on the iron at the rate imposed by the new tariff, and the defendants paid the same, which exceeded the duty at 20 *per cent.* by the sum charged, viz. $205. The plaintiff's account, as presented, included the charge of $10 for guaranty,—but that item was waived by them at the hearing before the auditors. Their account also contained a charge for the freight of the same iron.

The county court excluded the defendant's claim, and rendered judgment for the plaintiffs. Exceptions by defendants.

*Swift & Houghton* for defendants.

I. The possibility, or even probability, that the iron might be subject to a higher duty, than was imposed by any law of Congress then known to the parties, was a a risk proper to be insured against. Marshall on Ins. 1, 80. Roccus 85. Phil. on Ins. 1. 3 Kent, Lecture 48. Selw. N. P. 824.

II. That a law of Congress, *increasing* the duty on pig iron, had come in force at the time the guaranty, or contract of insurance, was made, cannot discharge the plaintiffs from their obligation, inasmuch as this was the risk intended to be insured against. The case bears analogy to the insurance of a ship *lost or not lost.* Marsh. on Ins. 237. 2 Saund. 200. 3 T. R. 360. 3 Kent 258. 3 Johns. Cas. 16. Park on Ins. 24.

III. All matters connected with the charges on the plaintiff's book ought to be adjusted before the auditors. The plaintiff's account consists in part of charges for the freight of the iron, and of the premium for risk ;—both of which items formed the consideration of the guaranty, and are necessarily connected with and make a part of the contract, and the defendants' claim for damages for breach of the guaranty is a proper subject for adjustment by the auditor,—at least so far as to extinguish the plaintiffs' account. 11 Vt. 490.

1. The case is clearly distinguishable from a contract, for a breach of which the damages cannot be ascertained by computation, but require the intervention of a jury ; for the amount due on the guaranty is as readily established as that of any book charge, or promissory note.

2. Book account will lie for money lent, or had and received, or for money paid, laid out and expended. The payment of the

$205 was so much paid on the plaintiffs' behalf for excess of duties, and book account will lie,—which is in the nature of debt. 11 Vt. 503. Ib. 466. 5 Vt. 451. 10 Vt. 231. 8 Conn. 413. 3 Dane's Abr. 318. 1 Aik. 355. 1 Swift's Dig. 582.

*Smalley, Adams & Hoyt* for plaintiffs.

The defendants' claim for damages for a breach of the contract of guaranty, as it is called, is not a proper subject of book account. Although that form of action has been of late years greatly extended, yet it has never been held that a mere tort, or a loss occasioned by a breach of covenant, or the non-performance of an agreement, could serve as the foundation for a charge on book. *Blanchard* v. *Butterfield,* 12 Vt. 451.

The opinion of the court was delivered by

BENNETT, J. The questions in this case arise upon a disallowance in the defendants' account of an item of two hundred and five dollars. It seems the plaintiffs shipped to the defendants a quantity of iron, and gave them a guarantee that it should pass the custom house before the enforcement of the tariff duties under the act of 1842. The defendants claim that this guarantee has been violated, and that they have been compelled to pay the duties upon the iron imposed by that act. Suppose all this to be granted, and the contract to be a binding one, this claim cannot avail the defendants in an action on book. They have paid no money to the plaintiffs, nor to their use; but to the custom house officer, to save their own property from seizure. Their claim rests in damages for the violation of an executory agreement, which cannot be made the ground of a claim to be adjudicated in an action on book account. The defendants, in auditing their accounts, are in this respect confined to the same rules which would govern the plaintiffs.

Judgment affirmed.